IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Marques Heath, | ) | C/A No.: 5:25-4200-JFA-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT & RECOMMENDATION |
| | ) | |
| South Carolina Department of Corrections; | ) | |
| Warden Nelson; Warden Canning, | ) | |
| individually and in their official capacities | ) | |
| as Wardens of Broad River Correctional | ) | |
| Institution, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Marques Heath initially filed this action in the Richland County Court of Common Pleas on February 31, 2025 against the South Carolina Department of Corrections ("SCDC"), Warden Nelson, and Warden Canning, alleging these Defendants violated his constitutional rights. The action was removed to federal court on May 19, 2025. On September 18, 2025, Defendant Warden Canning and SCDC filed their Motion for Summary Judgment, ECF No. 40.[1] Plaintiff filed his Response on October 6, 2025. ECF No. 48. Defendants filed a Reply on October 14, 2025. ECF No. 51. Plaintiff then sent the court what he styled as a Sur Reply, along with additional attachments to his Response. ECF Nos. 55; 58.[2] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Local Civil Rule

---

[1] Defendant Nelson filed his own Motion for Summary Judgment on March 19, 2026. ECF No. 62.

[2] Under Local Rule 7.07, a reply to a Motion is allowed, although discouraged. The Local Rules do not provide for Sur-Replies. A party may seek permission from the court to file an additional response or "sur-reply." *Perez v. S.C. Dep't of Labor, Licensing and Regulation*, No. 3:17-CV-3187-JFA, 2018 WL 2455093, at *4 n.10 (D.S.C. June 1, 2018). Plaintiff did not seek permission to file a sur-reply in this case or provide the court with additional documents in the form of a "Declaration"; however, the undersigned, in her discretion, may consider any additional arguments made that address any novel arguments made in Defendants' Reply.

73.02(B)(2), D.S.C, which provides for all pretrial proceedings in certain types of matters be referred to a United States Magistrate Judge. This matter is now ripe for review.

I.      Summary of Plaintiff's Factual Allegations

The incidents forming the basis of Plaintiff's Complaint occurred on November 7, 2023. On that day, Plaintiff was transferred to the Broad River Secure Facility ("BRSF") from Broad River Correctional Institution ("BRCI"). *See* Inmate Search Detail Report, p. 2, attached as Exhibit 1 to Defs.' Motion at ECF No. 40-2; *see also* Transfer of Inmates Record, attached as Exhibit 2 to Defs.' Motion, ECF No. 40-3. Defendants explain, and Plaintiff does not refute, that immediately preceding this transfer, the staff at BRCI found Plaintiff's cellmate stabbed and murdered in the cell they shared. *See* Incident Report, p. 2, 7, attached as Exhibit 3 to Defs.' Motion at ECF No. 40-4. Additionally, Plaintiff had also been in at least one other altercation with inmates at BRCI. *See* Incident Report. Plaintiff was eventually charged with the homicide of his roommate. *See* Exhibit 3, p. 1; ECF No. 40-4.[3]

While at BRSF, Plaintiff alleged that he asked SCDC staff to either be moved from a holding cell to a cell or for the staff to remove the restraints while he was in the holding cell. Compl., p. 4. According to Plaintiff, he suffers from a nickel allergy; thus, the handcuffs and leg irons had caused him to suffer an allergic reaction. Compl., p. 4. Plaintiff alleged that "he was denied" this request, and he thereafter informed SCDC staff that he would eat broken glass if the

---

[3] Aside from the fact that Plaintiff does not refute the reason for his transfer, there is evidence in the record that Plaintiff conceded his involvement in his cellmate's death. In his Complaint, he alleges that he had been placed in a holding cell after "an altercation with another inmate." Compl. p. 4. In one incident report provided by Defendants, Lieutenant Ward wrote, "[Heath] said they both was stabbing each other, and he got the best of him." *See* Exhibit 3 at 2. In one of Plaintiff's SCDC medical records, Plaintiff is quoted as saying, "I had to defend myself and now he is not here no more" when questioned about the incident with his cellmate. *See* SCDC Medical Records, p. 20, attached as Exhibit 10 to Defs.' Motion, ECF No. 40-11 at 20.

staff did not assist him in his request. Compl., p. 4; *see also* SCDC Medical Records, p. 1, attached as Exhibit 4 to Defs.' Motion, ECF No. 40-5. SCDC records, however, establish that Plaintiff wanted lunch and threatened to swallow glass if not fed. As a result of Plaintiff's threats of self-harm, and after attempts by SCDC officials to de-escalate the situation, SCDC officials deployed chemical munitions at Plaintiff. Compl., p. 4; Incident Report, p. 2, attached as Exhibit 5 to Defs.' Motion, ECF No. 40-6. Ultimately, SCDC officials deployed four bursts of chemical munitions to gain compliance with the directive given to Plaintiff to release the glass from his mouth. *See* Exhibit 5, p. 2.

Plaintiff does not allege that Defendant Warden Canning was involved in any way with the above-described incidents. Instead, Plaintiff alleges that this incident was a result of Warden Canning's "gross negligence in failing to employ sufficient staff members, failure to enforce its policies and procedures, and in failing to train or retrain its staff members to comply with existing policies and procedures." Compl., p. 4. Plaintiff indicates in his Complaint that he is not sure of the names of the officers involved because "no one disclosed" their names. Compl., p. 4. Plaintiff sued Defendants pursuant to 42 U.S.C. § 1983 for deliberate indifference to his right to be free from cruel and unusual punishment in violation of the Eighth Amendment, as well as the failure to provide appropriate medical care to inmates; failure to implement appropriate policies, customs and practices, as well as the failure to adequately train employees in using pepper spray as a weapon; and violations of the South Carolina Tort Claims Act. Plaintiff also seeks declaratory and injunctive relief.

In addition to incident reports and medical reports provided by Defendants, they have provided video footage of the events in question. See Video Evidence, attached to Defs.' Motion as Exhibits 7-9, ECF Nos. 40-8, 40-9, 40-10.

II.     Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249. "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995). A party cannot create a genuine issue of material fact solely with conclusions in his or her own argument, affidavit, or deposition that are not based on personal knowledge. *See Latif v. The Cmty.*

*Coll. of Baltimore*, 354 F. App'x 828, 830 (4th Cir. 2009) (affirming district court's grant of summary judgment, noting plaintiff's affidavit, which offered conclusions not based on his own knowledge, did not create genuine issues of material fact).

Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319, 322 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc.Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

    III.    Analysis

        a.  Eleventh Amendment Immunity

Defendants SCDC and Canning argue that, to the extent they are sued in their official capacity, they are entitled to immunity pursuant to the Eleventh Amendment.[4] SCDC argues that as a state agency, it is clearly an arm of the State of South Carolina and therefore not subject to suit. Defendant Canning argues that as associate warden, he is an alter-ego of the State and therefore not subject to suit in his official capacity, as he is not a "person" amenable to suit under § 1983. Plaintiff argues that these Defendants have waived immunity by removing this case to federal court.

In *Will v. Michigan Dep't of State Police*, the Supreme Court held that, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and] is no different from a suit against the State itself." 491 U.S. 58, 71 (1989). *Will* acknowledged that the scope of the Eleventh Amendment is not disregarded when considering claims under § 1983. *Id.* at 66. The Eleventh Amendment provides: "[t]he Judicial

---

[4] Defendants raised this as a defense in their Answer, as well. ECF No. 10.

power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. CONST. amend. XI. The United States Supreme Court has long held that the Eleventh Amendment also precludes suits against a state by one of its own citizens, as well as suits by citizens of another State. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). This immunity extends not only to suits against a state per se, but also to suits against agents and instrumentalities of the state. *Cash v. Granville Cnty. Bd. of Ed.*, 242 F.3d 219, 222 (4th Cir. 2001). Eleventh Amendment immunity also extends to "arms of the State" and state employees acting in their official capacity. *Doe v. Coastal Carolina Univ.*, 359 F. Supp. 3d 367, 378 (D.S.C. Jan. 9, 2019). By voluntarily removing a case to federal court, a defendant waives any immunity from suit in federal court with respect to any claims it otherwise would have been subject to in state court. *Lapides v. Bd. of Regents of the Univ. Sys. of Georgia*, 535 U.S. 613, 619 (2002). However, voluntary removal does not waive a defendant's immunity to any § 1983 claims. *Renciu v. S.C. Dep't. of Corr.*, No. 4:19-CV-01773-SAL-MGB, 2021 WL 11506592, at *4 (D.S.C. Jan. 6, 2021), report and recommendation adopted, No. 4:19-cv-01773-JD, 2021 WL 11506591 (D.S.C. Feb. 17, 2021); *see also Passaro v. Virginia*, 893 F.3d 243, 248 (4th Cir. 2019) (rejecting argument that the Commonwealth waived its sovereign immunity to a Title I claim by removing case to federal court). Thus, the undersigned recommends that claims against Defendant Canning in his official capacity should be dismissed as barred by the Eleventh Amendment. Likewise, because the State of South Carolina has not waived its Eleventh Amendment immunity from suit in state court for federal constitutional claims, voluntary removal of this case to federal court does not operate as a waiver of immunity from suit for these claims. *Briggs v. S.C. Dep't of Corr.*, No. 9:13-CV-1348-RMG, 2014 WL 1278173, at *11 (D.S.C. Mar. 27, 2014) (citing *Stewart v. North Carolina,* 393 F.3d 484 (4th Cir.2005) (finding no waiver where

6

state has not consented to suit in its own courts for such claims); *Lapides,* 535 U.S. at 619 (a state's voluntary appearance in federal court waives sovereign immunity only with respect to claims where a state has consented to suit in its own courts for such claims)). The undersigned therefore recommends finding that the Eleventh Amendment bars claims against SCDC and against Canning in his official capacity.

b. Exhaustion of Administrative Remedies

Defendant Canning argues Plaintiff failed to file a grievance related to the incidents described in his Complaint against him, nor did he file a grievance alleging medical neglect as to any alleged allergies. For this reason, Defendants argue Plaintiff did not exhaust his administrative remedies as to any claims against Canning in his individual capacity or any claims regarding medical neglect by SCDC officials. In his Response, Plaintiff argues that his allergies "are the causal link" for the SCDC officers' use of excessive force against him; therefore, it should be included as part of the grievance filed. Pl.'s Br. at 1, ECF No. 48.

The Prison Litigation Reform Act (the "PRLA"), 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To satisfy this requirement, a plaintiff must avail himself of all available administrative remedies. *See Booth v. Churner*, 532 U.S. 731 (2001). Those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Porter,* 534 U.S. at 524 (quoting *Booth*, 532 U.S. at 739).

The purpose of the exhaustion requirement is twofold. First, it gives an administrative agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court[.]" *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). Second, "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id.* Satisfaction of the exhaustion requirement requires "using all steps that the agency holds out, and doing so *properly*." *Id.* at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original)). Thus, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).  Defendants have the burden of establishing that a plaintiff failed to exhaust his administrative remedies.  *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 681 (4th Cir. 2005).

In *Jones v. Bock*, the Supreme Court of the United States held that a prisoner's § 1983 action was not automatically rendered noncompliant with the PLRA exhaustion requirement by virtue of the fact that not all defendants named in a complaint had been named in the administrative grievances. 549 U.S. at 219; *Moore v. Bennette*, 517 F.3d 717, 726 (4th Cir. 2008). In *Moore*, the Fourth Circuit explained that it is the prison's requirements, rather than that PLRA, that define the boundaries of proper exhaustion. *Id.* at 726. Here, there is no evidence that the applicable grievance procedures required individual defendants be named, and Plaintiff further indicates that he was not sure of all the names of the SCDC staff involved in the incident.

With respect to the argument that Plaintiff failed to exhaust any medical neglect claim as to his alleged nickel allergy, Plaintiff argues that his excessive force claims stem directly from the failure of SCDC staff to address his medical needs. Pl.'s Br. at 1; ECF No. 48. Plaintiff's grievance indicates, "staff is saying that they were spraying me for my safety, but that is a lie. I only stated

that if I wasn't taken out of the holding cell, where I had been for 6 to 7 hours in handcuffs and shackles, that I would eat some of the broken glass." Defendants' Inmate Grievance Form Step 2, attached as Exhibit 11 to Defs.' Motion, ECF No. 40-12. In his Step 1 Grievance, Plaintiff states, "I believe the staff has a vendetta against me, and is purposefully doing that to hurt and harm me." *See* Exhibit 11, p. 3. Plaintiff now argues that he wanted the handcuffs removed, because he was having an allergic reaction to the metal handcuffs. When this did not occur, he threatened to swallow glass, and the unplanned use of force ensued. In reviewing the support for Defendants' contention that Plaintiff did not properly exhaust this claim, they provide the affidavit of Felecia McKie, the Agency Inmate Grievance Coordinator. *See* McKie Aff., attached as Exhibit 12 to Defs.' Motion, ECF No. 40-13. However, a review of her affidavit reveals only that Plaintiff did not file a grievance relating to the denial of medical care *following* the incident on November 7, 2023; whereas it is Plaintiff's argument that he was frustrated that his alleged well-documented nickel allergy had been ignored. Accordingly, while the undersigned agrees that Plaintiff made no mention of the denial of medical care related to his nickel allergy after the use of force incident, the undersigned finds that there is a dispute as to whether Plaintiff had previously raised this issue in grievances prior to the use of force event. Therefore, the undersigned finds there is a question eas to whether Plaintiff adequately failed to exhaust his administrative remedies before filing suit, as it relates to the medical neglect claim.

      c.  Injunctive Relief

Defendants argue that Plaintiff's request for injunctive relief is now moot because he has been transferred from BRSF to Kirkland Correctional Institution. Plaintiff responds that his claim for injunctive relief should remain to ensure he is not placed around the same SCDC staff in the future. Pl.'s Br. at 1; ECF No. 48. However, prisoners do not have a constitutional recognized

liberty interest in a particular prison placement. *Meachum v. Fano*, 427 U.S. 215, 225 1976. Federal courts give great consideration to a correctional system's need to maintain order, discipline, and control; for that reason, choices as to where and how to confine a prisoner are a determination left to the correctional system. *See Wolff v. McDonnell*, 418 U.S. 539, 558–62 (1974). Finally, an inmate does not have a constitutional right to be confined in a particular institution, at a particular custody level, or in a particular portion or unit of a correctional institution. *See generally Olim v. Wakinekona*, 461 U.S. 238, 245-48 (1983). Accordingly, the undersigned recommends denying the requested injunctive relief.

d.   Eighth Amendment Violations

Defendants argue that Plaintiff fails to establish a violation of his constitutional rights afforded to him under the Eighth Amendment.[5] Here, it appears Plaintiff brings two claims under the Eighth Amendment: (1) a claim for excessive use of force in the use of chemical munitions; and (2) a claim that officials were deliberately indifferent to his medical needs as it relates to his nickel allergy. The issue, however, is that Plaintiff does not bring these claims against any individual that personally participated in the events in question, nor has he shown that Defendant Canning or SCDC is somehow responsible for any action or inaction in this case.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. CONST. amend. VIII. This prohibition includes both protection from excessive sentences but also inhumane treatment and conditions while imprisoned. *Williams v. Benjamin*, 77 F.3d 756, 762 (4th Cir. 1996).  The analysis of whether there is an Eighth Amendment violation includes both a

---

[5] Plaintiff's Complaint includes a merging of his second and third causes of action; however, it is reasonably clear from his Complaint, as well as his filings, that he alleges that one or more SCDC officials used excessive force in the use of chemical munitions, and that he was denied certain medical treatment related to his nickel allergy when he was placed in handcuffs, thereby causing his skin to have a reaction.

subjective and objective component. *Id.* To establish the subjective component of a conditions-of-confinement claim, a prisoner must show that prison officials acted with deliberate indifference—that is, the prisoner must show the officials acted with more than mere negligence but less than malice. *See Williams*, 77 F.3d at 761; *see also Farmer v. Brennan*, 511 U.S. 825, 835–37 (1994). For the objective component of a conditions-of-confinement claim, the prisoner must demonstrate that the deprivation was sufficiently serious or an extreme deprivation of his rights. *Id.; see Williams v. Branker*, 462 F. App'x 348, 353 (4th Cir. 2012).

To establish a constitutional excessive force claim, an inmate must establish that the "prison official acted with a sufficiently culpable state of mind (subjective component); and [that] the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Iko v. Shreve*, 535 F.3d, 225, 238 (4th Cir. 2008) (citing *Williams*, 77 F.3d at 761). For the subjective component, Plaintiff must prove that Defendants assaulted and restrained him "maliciously and sadistically for the very purpose of causing harm" rather than in a good-faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986).

The Fourth Circuit has instructed that district courts use the following test in order to analyze the subjective component of the excessive force for Plaintiff's cause of action:

> (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) "any efforts made to temper the severity of a forceful response."

*Iko v. Shreve*, 535 F.3d at 239. To establish the objective component, Plaintiff must show that "the alleged wrongdoing is objectively 'harmful enough' to establish a constitutional violation" in the context of "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1, 2 (1992). When prison officials maliciously and sadistically use force to cause harm, there always exists a constitutional violation regardless of whether a significant injury is present. *Id.* at

11

9; *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). As to Plaintiff's claims that his nickel allergy was ignored, the undersigned acknowledges that the government is obligated to provide medical care to incarcerated individuals. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).

Defendant Canning argues that he had no personal involvement in the incident that occurred on November 7, 2023. Plaintiff argues that Defendant Canning admits to being at work on the date of the incident. Pl.'s Br. at 3. Liability under § 1983 involves a showing that "the official charged acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985).  The doctrine of respondeat superior is inapplicable in these cases. *Id.*; *see Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (stating that there is no respondeat superior liability under § 1983). Here, in reviewing the Use of Force Report provided by Defendants, Canning is not listed as one of the employees involved in any aspect of the incident. *See* Use of Force Report, attached as Exhibit 6 to Defs.' Motion, ECF No., 40-7 at 1. Further, Plaintiff's Complaint does not allege the involvement of Defendant Canning during the incident in question, nor does he argue Canning was in any way personally involved in his Response. As if conceding this point, Plaintiff alleges that Canning, as Warden, is responsible for the officers at the correctional institution. In other words, by virtue of his position, Plaintiff believes Canning is liable. The undersigned therefore agrees with Defendants that Plaintiff did not allege or otherwise establish Canning's personal involvement in the incident in question.[6]

To the extent Plaintiff alleges that Canning, as Warden, is responsible for the officers at the correctional institution, the undersigned has also considered whether Plaintiff adequately establishes a claim of supervisory liability against Defendant Canning. Supervisory officials may

---

[6] Aside from the fact that Canning was not personally involved in this incident, Plaintiff does not necessarily refute the fact that chemical munitions were deployed to try and restore order. Indeed, the video evidence provided by Defendants supports this explanation.

be held liable in certain circumstances upon a "recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (quoting *Slakan v. Porter*, 737 F.2d 368, 372-73 (4th Cir. 1984)). To establish supervisory liability under § 1983 one must show: (1) the "supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury"; (2) the "supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,'"; and (3) there was an "affirmative causal link between the supervisors inaction and the particular constitutional injury suffered by the plaintiff." *Shaw*, 13 F. 3d at 799 (internal citation omitted).

Defendant Canning provided an affidavit explaining that he had no actual or constructive knowledge of any of the acts at issue on November 7, 2023. *See* Affidavit of Joseph Canning, ¶¶ 2, 11, attached as Exhibit 14 to Defs.' Motion, ECF No. 40-15. Plaintiff does not refute Canning's testimony that he was not involved in the actual event. Further, Defendant Canning argues that Plaintiff has failed to show that any response by him to the event in question was inadequate. This is true because the Use of Force Report does not indicate that any employee corrective action was needed after the unplanned event using chemical munitions. *See* Use of Force Report at 3; ECF No. 40-7. The Report indicated there was indeed a warden review; however, Canning was not involved. *See* Use of Report at 3.

Nor does Plaintiff allege any supervisory liability as to any claim that Plaintiff did not receive adequate medical treatment for his nickel allergy. Plaintiff provides no evidence to support a finding that Canning had any knowledge of Plaintiff's individual medical conditions. Further, the record does not contain any record of grievances filed by Plaintiff regarding any allergy he

13

suffered that would have allowed Canning to have had the opportunity to respond to any perceived issue. Defs.' Motion at 11. Finally, Canning argues that Plaintiff has failed to establish a causal link between any alleged inaction on his part and the alleged constitutional injuries suffered by Plaintiff. Canning argues that there is no evidence that he gave any instructions regarding the type of restraints to use on Plaintiff, nor was he involved with the decision to utilize force or the medical treatment afterward.  This argument is bolstered by the testimony of Miles Perkins, a sergeant at BRSF. *See* Affidavit of Miles Perkins, ¶ 1, attached as Exhibit 15 to Defs.' Motion at 11; ECF No. 40-16. Mr. Perkins avers that Plaintiff placed broken glass in his mouth and threatened to swallow it if he was not transferred from the holding cell he was in, necessitating the use of force. Perkins Aff., ¶¶ 6-7. Mr. Perkins further provides that Defendant Canning was not notified prior to the deployment of chemical munitions, nor did he provide any directives to use force. Perkins Aff., ¶ 7. Finally, Mr. Perkins explains that he was unaware of any metal allergy suffered by Plaintiff, nor did he recall Plaintiff indicating he was suffering from an allergic reaction prior to the use of force incident. Perkins Aff., ¶ 8. These statements by Mr. Perkins are further supported by the medical exam performed after the use of force incident.

In his Response, Plaintiff "admits Defendant Canning did not physically use force himself, but did supervise it." Pl.'s Br. at 3, ECF No. 48. Plaintiff then argues that "staff" knew he had an allergy because it was documented. Pl.'s Br. at 3. Plaintiff further argues that stating his medical condition to staff "should have been enough to gain relief." Pl.'s Br. at 4. Finally, he argues that "anytime [Canning] is at work, if use of force is used, he is present, and supervises it, summary judgment should not be granted to Defendant Canning." Pl.'s Br. at 4. These allegations are simply unsupported by the record in this case.

First, Plaintiff has failed to provide any evidence that Warden Canning had knowledge of

14

any subordinate's[7] conduct that was pervasive and constituted an unreasonable risk of injury. Second, while Plaintiff generally alleges that Canning, as supervisor, should have been supervising the excessive use of force, Plaintiff ignores the fact that in this case, the use of force was unplanned, given that he was threatening to harm himself. Further, he provides no evidence that Canning had knowledge of any grievances filed on the part of Plaintiff or that he routinely reviewed medical records, such that he was both aware of his allergy and aware that Plaintiff had been placed in handcuffs after being sent to BRSF. Simply put, Plaintiff does not provide any allegations or evidence that Canning had any knowledge of the incidents complained of in the Complaint, and he otherwise has not named any of the officials involved in the use of force incident as defendants. Accordingly, the undersigned recommends granting summary judgment in favor of Defendant Canning.

e. Qualified Immunity

Canning argues that he is entitled to qualified immunity. When a qualified immunity defense is raised, the courts apply a two-part test. First, the court must determine whether the facts viewed in the plaintiff's favor make out a violation of one's constitutional rights, and second, whether the violated right was clearly established at that time. *Stanton v. Elliott*, 25 F.4th 227, 233

---

[7] Plaintiff continually uses the word "staff"; therefore, the undersigned is unable to adequately analyze which members of the prison staff Canning failed to supervise. For the purposes of this Motion, the undersigned assumes it was one or more individuals involved in either placing him in the holding cell in restraints or deploying chemical munitions after Plaintiff threatened harm to himself. General, conclusory, and collective allegations against groups of defendants fail to allege a plausible § 1983 claim. *See Langford v. Joyner*, 62 F.4th 122, 125 (4th Cir. Mar. 2, 2023) (recognizing that the plaintiff's complaint failed to meet the plausibility standard when it did not set forth who the defendants were beyond being employees where he was incarcerated or in what capacity the defendants interacted with the plaintiff).

15

(4th Cir. 2022) (citing *Pearson v. Callahan*, 555 U.S. 233, 231 (2009)). The Fourth Circuit employs a split burden of proof for the qualified immunity defense. The plaintiff bears the burden of proving the first prong, and the [officer] bears the burden on the second prong. *Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022) (citing *Henry v. Purnell*, 501 F.3d 374, 377-78 & n.4 (4th Cir. 2007)); *see also Mays v. Sprinkle*, 992. F.3d 295, 302 n.5 (4th Cir. 2021) (explaining that plaintiff has the burden of proof to show a constitutional violation, while defendant must show the violation was not clearly established). To be a clearly established right, it must be sufficiently clear that a reasonable official would have understood that what he or she is or was doing violates that right. *Taylor v. Barkes*, 575 U.S. 822, 825 (2015). Qualified immunity protects all but the "plainly incompetent or those who knowingly violate the law." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015) (citing *Ashcroft v. Al-Kidd*, 563 U.S. 731, 743 (2011)).  Here, because the undersigned has found that Plaintiff failed to establish that Canning violated his constitutional rights, Plaintiff has failed to prove the first prong. Thus, the undersigned recommends finding that Canning is alternatively entitled to qualified immunity, as there is no evidence that he knowingly violated the law.

       f.   South Carolina Tort Claims Act

Defendants further argue that they are entitled to summary judgment as to Plaintiff's claims brought pursuant to the South Carolina Tort Claims Act ("SCTCA"). Plaintiff alleges that Defendants "acted in a negligent, grossly negligent, reckless, willful, and wanton manner causing injury to Plaintiff." *See* Compl., ECF No. 1. The SCTCA applies to a plaintiff's claims where the complaint alleges torts were committed by government employees acting within the scope of their official duty. *Flateau v. Harrelson*, 584 S.E.2d 413, 417, 355 S.C. 197 (S.C. Ct. App. 2003). The threshold question is whether an individual's alleged actions fall inside or outside the ambit of the SCTCA. *Smith v. City of Greenwood*, No. 8:09-cv-2061-HFF-BHH, 2010 WL 2382479, at *3

16

(D.S.C. June 14, 2010). Defendants SCDC and Canning provide several arguments as to why Plaintiff's tort claim alleging gross negligence fails. The undersigned will address each in turn.

i.   Failure to Name Proper Defendant

Defendants first argue that Defendant Canning cannot be held individually liable for the state law tort claims brought against Defendants. The undersigned agrees. The SCTCA is the exclusive remedy for any tort committed by an employee of a governmental entity. S.C. Code Ann. § 15-78-70(a). The SCTCA provides that when an employee is individually named, the agency or political subdivision for which the employee was acting must be substituted as the party defendant. S.C. Code Ann. § 15-78-70(c). Under the SCTCA, an employee may not be personally liable *unless* "it is proved, not alleged that his conduct was not within the scope of his official duties or that it constituted fraud, actual malice, intent to harm, or a crime involving moral turpitude." S.C. Code Ann. § 15-78-70(b) (emphasis added). Here, Courts have consistently interpreted the SCTCA as requiring a plaintiff to "sue the agency for which the employee works, rather than suing the employee directly" if a plaintiff claims a government employee acted negligently in the official performance of one's duties. *Faulkner v. York County School District*, No. 0:21-cv-02090-JMC, 2022 WL 673684, *5 (D.S.C. March 7, 2022) (quoting *Flataeu v. Harrelson*, 584 S.E.2d 413, 418 (S.C. Ct. App. 2003)). An employee of a governmental entity is immune from suit for tortious acts committed within the scope of his or her official duties. *Id.* Aside from the fact that Plaintiff provides no allegations that Defendant Canning was personally liable for any actions complained of in his pleadings, Plaintiff wholly fails to allege that Defendant Canning, or any other prison employee, acted outside of the scope of his employment, or otherwise acted with actual malice or intent to harm. Accordingly, the undersigned agrees that any tort claims brought against Defendant Canning in his individual capacity should be dismissed.

17

ii.   SCTCA Exceptions to Waiver of Immunity

Defendant SCDC next argues that as a governmental entity, it is immune from suit under the SCTCA. Specifically, SCDC points to § 15-78-20(f), which provides that, "[t]he provisions of this chapter…must be liberally construed in favor of limiting the liability of the State." Section 15-78-60 lists several exceptions to the waiver of sovereign immunity, noting the exceptions to which a governmental entity, such as SCDC is not liable for a loss. Defendants argue that the following exceptions to the waiver of sovereign immunity apply: § 15-78-60(1), (2), (3), (4), (5), (6), (13), (17), (20), (21), (23), and (25). However, Defendant SCDC only specifically discusses the discretionary immunity exception found in § 15-78-60(5) and the exception in § 15-78-60(25). Under this code section, a governmental entity is not liable for a loss resulting from the exercise of discretion or judgment by the governmental entity or its employee, or the performance or failure to perform an act or service in the discretion or judgment of the employee. § 15-78-60(5). Here, Defendant SCDC argues that its employees made a conscious decision to employ a measure of force, namely utilizing chemical munitions in response to a threat of self-harm on the part of Plaintiff. Plaintiff does not provide a substantive response to this argument, and the video evidence as well as the Use of Force Report supports a finding that the governmental employees had to exercise judgment in discerning how to respond to the situation with Plaintiff. The undersigned therefore agrees that this exception to the waiver of immunity applies as to Plaintiff's claims regarding gross negligence in responding to the use of force by SCDC officials. Defendants also point to S.C. Code Ann. § 15-78-60(25), which provides that a governmental entity is not liable for loss resulting from its "responsibility or duty including but not limited to supervision, protection, control, confinement, or custody of any [inmate] except when the responsibility or duty is exercised in a grossly negligent manner." The undersigned will next consider how this exception

18

applies to Plaintiff's gross negligence claim alleged against Defendants in this case.

### iii. Gross Negligence

Defendants next argue that Plaintiff's claim that Defendant SCDC is liable under a theory of gross negligence in their response to his nickel allergy fails as a matter of law. Plaintiff disagrees. Plaintiff's argument focuses less on the use of force incident and instead on the fact that he believes one or more employees should have been aware of his nickel allergy and avoided placing him in handcuffs in the holding cell for the length of time he was held there. Specifically, Plaintiff argues that he pleaded with "staff" to put him in a cell, but they ignored him, thereby leading to Plaintiff "solving the issue" by threatening to swallow glass. Pl.'s Br. at 5. Further, and more importantly, Plaintiff states, "Plaintiff has no proof that he told Defendants about his allergies, but upon reading other people's reaction to nickel allergies you should know Plaintiff told someone. There have been people that suffered reactions from having change in their pockets." Pl.'s Br. at 48; ECF No. 56. In other words, Plaintiff's argument is that while he does not have any evidence that Defendants (or any other staff) were actually aware that he had a nickel allergy, based upon the general symptoms caused by a nickel allergy, SCDC staff should have been able to spot his condition.

Under South Carolina law, gross negligence is the "*intentional* conscious failure to do something which is incumbent upon one to do or the doing of a thing intentionally that one ought not to do. It is the failure to exercise slight care." *Jinks v. Richland Cty.*, 585 S.E.2d 281, 283, 355 S.C. 341 (S.C. 2003) (emphasis added). The elements of gross negligence include: (1) a duty of care owed to the plaintiff by defendant; (2) a breach of that duty by a grossly negligent act or omission; and (3) damages proximately resulting from the beach of duty. *See Cockrell v. Lexington Cty. Sch. Dist. One.*, No. 3:11-cv-2042-CMC, 2011 WL 5554811, at *5 (D.S.C. Nov. 15, 2011).

19

Gross negligence is a mixed question of law and fact and should be presented to a trier of fact *unless* the evidence supports but one reasonable inference. *Bass v. S.C. Dep't. of Soc. Servs.*, 780 S.E.2d 252, 259, 414 S.C. 558 (S.C. 2015) (emphasis added). Defendants argue that Plaintiff cannot show there was a breach of duty on the part of Canning in this case. Defendants argue the exception found in S.C. Code Ann. § 15-78-60(25), which provides that a governmental entity is not liable for loss resulting from its "responsibility or duty including but not limited to supervision, protection, control, confinement, or custody of any [inmate] except when the responsibility or duty is exercised in a grossly negligent manner" applies.

The actions comprising the allegations in the Complaint, supported by evidence within the record, provide only one reasonable inference in this case; that is, Defendants' actions do not constitute gross negligence. First, as evidenced by the Incident Reports, Plaintiff was removed from his cell after an altercation between he and his cellmate occurred. He was placed in a BRSF holding cell to separate Plaintiff from harming other inmates and/or SCDC officials. Plaintiff, apparently unhappy with being placed in a holding cell, threatened to swallow glass if he was not immediately transferred to another cell. In responding to his threats of self-harm, SCDC officials tried to de-escalate the situation prior to deploying chemical munitions. Afterward, the SCDC officials took Plaintiff for a medical assessment. Additionally, SCDC officials sent Plaintiff for a mental wellness visit, as evidenced by the records provided by Defendants. These actions were all precipitated by Plaintiff's altercation with his cellmate and subsequent move to BRSF. Plaintiff's argument is that by failing to provide medical care related to his nickel allergy, Defendants were grossly negligent.[8] However, aside from the fact that the record before the court contains no

---

[8] As previously explained, there is an absence of evidence that Defendant Canning was in any way personally involved in the incident(s), nor is there any evidence that he was aware of Plaintiff's reported nickel allergy.

evidence that any SCDC official involved in the events that unfolded had any knowledge of a nickel allergy and intended to ignore any supposed skin outbreak, Plaintiff's argument ignores the fact that SCDC officials continually responded to the events taking place that day, including providing Plaintiff medical care post use of force. Further, the post use of force medical records indicate that Plaintiff complained about a cut on his hand, the fact that he had no toilet in the holding cell, and that he had not been provided lunch. However, there is no evidence that Plaintiff complained on any issues with any skin rash or issue related to the metal handcuffs. *See* SCDC Medical Records at 7, ECF No. 40-11. Specifically, the medical record indicates that Plaintiff threated to swallow glass "if he was not given his food tray or taken to a room." SCDC Medical Records at 10, ECF No. 40-11; *see also* Medical Records at 14, ECF No. 40-11. Finally, within his own grievance form, Plaintiff indicates that he had been in his holding cell for "6 to 7 hours in handcuffs and shackles" and that he would eat broken glass if he was not moved to a cell. Step 2 Grievance Form at 1; ECF No. 40-12. However, Plaintiff does not indicate that he was suffering from an allergic reaction or otherwise had any issues with the metal in the handcuffs. Aside from failing to establish that any SCDC officials breached a duty of care, Plaintiff does not present any evidence of damages resulting from this alleged gross negligence. Accordingly, the undersigned recommends dismissing the gross negligence claim against Defendants for the reasons outlined above.

IV.    Conclusion & Recommendation

The court has made a careful review of the pleadings, evidence, and arguments in this case. For the foregoing reasons, the undersigned recommends Defendants' Motion, ECF No. 40, be granted for the reasons stated herein.

IT IS SO RECOMMENDED.

June 24, 2026                                    Kaymani D. West
Florence, South Carolina                         United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. [I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 2317**
**Florence, South Carolina 29503**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).